## TALGE MAHOGANY COMPANY *v.* HOCKETT.

[No. 8,159.   Filed January 6, 1914.]

1. TRIAL.— *Instructions.— Inferences from Facts Proved.— Negligence.*—While it is error to tell a jury what inference it shall, must, or ought to draw from certain facts, the court does not invade the province of the jury by stating in an instruction that negligence might be inferred if certain facts were found to be proved, but is thereby exercising the prerogative and duty of the court. p. 305.

2.  NEGLIGENCE.— *Presumptions.— Trial.—Instructions.*—Proof that all the instrumentalities causing an injury were under the exclusive control and management of defendant, that the accident was such as ordinarily would not have occurred if due care had been exercised by defendant, and that a duty to exercise such care was owing the plaintiff from defendant, casts upon the defendant the presumption of negligence and the burden of explaining the accident consistent with due care on his part; hence an instruction that if defendant was to erect a scaffold to be used by plaintiff in placing a certain hopper for defendant, and knew the approximate weight of such hopper and was informed of the number of men that would be required on such scaffold, and accordingly caused the scaffold to be constructed, and that such scaffold broke and fell with plaintiff while he was in the act of placing such hopper, the jury could infer negligence in the construction, in the absence of other evidence as to the cause of the accident, was not objectionable as placing on defendant the burden of proving that it was not negligent. p. 306.

3.  APPEAL.—*Review.—Admission of Evidence.—Sufficiency of Motion to Strike.*—In an action for personal injuries from the fall of a scaffold furnished by defendant for plaintiff in the performance of certain work for defendant, where plaintiff, on direct examination, testified that after the accident he had examined the piece of timber which broke in the scaffold, and again on re-direct examination was examined concerning it, and then on re-cross-examination it was developed that he had no personal knowledge that the timber examined had been a part of the scaffold, a motion "to strike out the evidence on that piece of timber because he is testifying as to hearsay", was not sufficiently specific and the overruling of the same was not error. p. 308.

4.  NEGLIGENCE.— *Answers to Interrogatories.—Verdict.—Contributory Negligence.*—In an action for personal injuries from the fall of a scaffold erected by defendant for the use of plaintiff in placing a certain hopper for defendant, answers by the jury to interrogatories showing that he saw the scaffold erected, that after he went on it he heard it crack with a sound as though breaking, that he then made an examination to see if it was strong enough to bear the strain of raising the hopper, said he believed it was all right, and then went ahead with the work, and also showing that he was not familiar with the construction of scaffolds and was incompetent to discover that the scaffold was weak or defective by examination thereof either before or after going on same, do not show that plaintiff was guilty of contributory negligence, and are not in conflict with the general verdict for plaintiff. p. 308.

From Hamilton Circuit Court; *Meade Vestal,* Judge.

Action by George M. Hockett against the Talge Mahogany Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*William D. Headrick* and *Samuel K. Ruick,* for appellant. *George W. Galvin,* for appellee.

IBACH, J.—The court gave the following instruction: "If the plaintiff agreed with the defendant to make and put in place in defendant's boiler room a galvanized iron hopper, the size and approximate weight of which was known to defendant, and as part of the contract the defendant agreed to construct a scaffold to be used by plaintiff and other workmen in erecting said hopper, and if defendant was informed as to the number of men that would be required to go upon said scaffold, and accordingly caused its workmen to construct the scaffold, and when completed the plaintiff and his helpers went upon said scaffold and while in the act of putting said hopper in place the scaffold broke and fell and plaintiff was thrown to the ground and sustained the injuries complained of, in the absence of other evidence of the cause of the fall of said scaffold, the jury may infer from the very fact that it broke and fell that the defendant was negligent in doing the work of its construction or in selecting the material therefor, if it appears that at the time the scaffold broke it was being used in the manner as contemplated by defendant."

The authorities do not support the contention that the court, in giving this instruction, invaded the province of the jury by stating that it might infer negligence from 1. certain facts, if it found them to exist. The authorities cited by appellant hold only that it is error for the court to tell the jury what inference it *shall, must,* or *ought* to draw from certain facts. Where the judge tells the jury what inference *shall, must,* or *ought* to be made from indicated facts, he is clearly invading the jury's prov-

ince, but where he tells the jury what inference *may* be drawn from a given state of facts, he is not only not invading the province of the jury, but is exercising the prerogative and duty of the court. It was said by Mitchell, J., in the case of *Wabash, etc., R. Co.* v. *Locke* (1887), 112 Ind. 404, 421, 14 N. E. 391, 2 Am. St. 193, "While it is quite true that it is the duty of the jury, under proper instructions, to determine whether or not upon any given state of facts negligence *ought* to be inferred, it is nevertheless the duty of the court first to say whether, upon the facts most favorable to the plaintiff, negligence *can* be inferred. * * * 'The judge * * * has a certain duty to discharge, and the jurors have another and a different duty. The judge has to say whether any facts have been established by evidence from which negligence *may be* reasonably inferred; the jurors have to say whether, from those facts, when submitted to them, negligence *ought to be* inferred. It is, in my opinion, of the greatest importance in the administration of justice that these separate functions should be maintained, and should be maintained distinct.' "

It is also urged that, in the absence of other evidence of the cause of the fall of the scaffold, it was wrong for the jury to infer negligence of the defendant in constructing the scaffold or in selecting material for it, from the mere fact that the scaffold broke and fell while being used in the manner contemplated by defendant; and that this instruction shifted the burden of proving negligence from the plaintiff, and placed the burden of proving that it was not negligent on the defendant. After a review of many cases the court said, in *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 436, 81 N. E. 600, "From a consideration of all the cases on the subject this general rule may be adduced: Where an accident happens resulting in the injury to a person or his property, and it is made to appear that all the instrumentalities causing the accident are under the exclusive control and management of the defendant, and

the accident is such as ordinarily would not occur if due care was exercised by those who have control of such instrumentalities, and a duty to exercise such care is owing the plaintiff from the defendant, then proof of the circumstances of the accident and injury resulting therefrom casts upon the defendant the presumption of negligence and the burden of explaining the áccident consistent with due care on his part." "In some cases a presumption of negligence arises from the very nature of the cause of the damage sustained. The meaning of the well-known maxim, *'res ipsa loquitur'* is simply that the nature of the event is such that the immediate efficient cause of the injury itself declares its negligent character, giving rise to the presumption of negligence. * * * In the case of the falling of an article upon a person, or the rolling or hurling of one against him, or the toppling over of a structure, or of an article resting against a structure, the principle of *res ipsa loquitur* operates." 8 Ency. Evidence 871, 886. "The fall of a building, a scaffold, an elevator or other hoisting machinery, the sudden giving way of the door of a railway carriage, the fall of a gangway plank between a ship and wharf, or the explosion of a boiler is presumptive evidence of negligence." 1 Shearman & Redfield, Negligence (6th ed.) §60. This was not a case of master and servant, but one where plaintiff was on defendent's premises by invitation, and where defendant had contracted to furnish a scaffold for the work which plaintiff was to do, which contract necessarily carried the obligation to furnish an ordinarily safe scaffold. But the courts have not hesitated to apply the doctrine of *res ipsa loquitur* to cases where a servant fell from a scaffold provided by the master. *Solarz* v. *Manhattan R. Co.* (1898), 155 N. Y. 645, 8 Misc. 656, 29 N. Y. Supp. 1123, 49 N. E. 1104; *Green* v. *Banta* (1882), 97 N. Y. 627, 48 N. Y. Super. Ct. 156; *Flynn* v. *Gallagher* (1885), 52 N. Y. Super. Ct. 524; *Westland* v. *Gold Coin Mines Co.* (1900), 101 Fed. 59, 41 C. C. A. 193; *Cleary* v. *General Contracting Co.* (1909), 53 Wash. 254,

101 Pac. 888; *Prendible* v. *Connecticut R. Mfg. Co.* (1893), 160 Mass. 131, 35 N. E. 675; *Arkerson* v. *Dennison* (1875), 117 Mass. 407.

The following cases from our own State also generally support the doctrine announced in the instruction under consideration. *Louisville, etc., Traction Co.* v. *Worrell* (1906), 44 Ind. App. 480, 86 N. E. 78; *Bedford, etc., R. Co.* v. *Rainbolt* (1885), 99 Ind. 551; *Indianapolis St. R. Co.* v. *Darnell* (1904), 32 Ind. App. 687, 68 N. E. 609; *Chicago, etc., R. Co.* v. *Vester* (1911), 47 Ind. App. 141, 93 N. E. 1039; *Chicago, etc., R. Co.* v. *Pritchard* (1907), 168 Ind. 398, 79 N. E. 508, 81 N. E. 78, 9 L. R. A. (N. S.) 857; *Indiana Union Traction Co.* v. *Scribner* (1911), 47 Ind. App. 621, 93 N. E. 1014. The court did not err in the giving of this instruction.

Appellee on direct examination testified that after the accident, he had examined the piece of timber which broke in the scaffold, and answered several questions relating to it. Again on redirect examination he was questioned concerning this piece of timber, and then upon recross-examination it was developed that he did not have personal knowledge that the piece of timber about which he had testified had been a part of the scaffold. Appellant's counsel then moved the court "to strike out the evidence on that piece of timber because he is testifying as to hearsay." The court did not err in overruling this motion, for it was not sufficiently specific, and did not indicate with reasonable certainty the particular answers sought to be stricken out. *O'Brien* v. *Knotts* (1905), 165 Ind. 308, 316, 75 N. E. 594; *Wysor Land Co.* v. *Jones* (1900), 24 Ind. App. 451, 459, 56 N. E. 46.

It is found by answers to interrogatories that appellee saw the scaffold erected, that after he went on the scaffold he heard it crack, with a sound something like it was breaking, that he then made an examination of the scaffold to see if it was strong enough to bear

Indianapolis Traction, etc., Co. *v.* Taylor—55 Ind. App. 309.

the strain of raising the hopper, said that he believed it to be all right, and then went ahead with the work. It is also found that appellee by examination either before he went on to the scaffold or after the scaffold cracked could not have learned that it was weak, defective, or not of sufficient strength to bear the weight of placing the hopper in position, for the reason that he was not competent, and also that he was not familiar with the construction of scaffolds. These answers do not show appellee to have been guilty of contributory negligence, and are not in conflict with the general verdict by which he was found not to have contributed by his negligence to his injury, for, under the issues, evidence was admissible from which the jury may have found that appellee after he heard the scaffold crack made such an examination and such tests of its strength as a man of ordinary prudence not skilled in the construction of scaffolds would make, but could not learn that it was weak, and that after such examination a reasonably prudent man would continue in the use of such scaffold.

No error has been made to appear, and the judgment is affirmed.

NOTE.—Reported in 103 N. E. 815. As to presumption of negligence from happening of accident, see 113 Am. St. 986. As to presumption of exercise of care, see 116 Am. St. 108. For presumption of negligence from occurrence of accident to person on defendant's premises, see 15 L. R. A. 33. See, also, under (1) 38 Cyc. 1673; (2) 29 Cyc. 590, 597, 643; (3) 38 Cyc. 1404; (4) 29 Cyc. 658.