**EAGLE MOTOR LINES, INC., Appellant (Defendant Below),**

v.

**Nelson R. GALLOWAY and Ronald G. Hawkins, Appellees (Plaintiffs Below).**

**No. 1–1080A297.**

Court of Appeals of Indiana, Fourth District.

Oct. 21, 1981.

Thomas C. Bigley, Jr., James F. Rosner, Sharpnack, Bigley, David & Rumple, Columbus, Bruce Markel, III, Markel, Markel & Markel, Brownstown, for appellant.

Kenneth A. Layton, David W. Paugh, Montgomery, Elsner & Pardieck, Seymour, for appellees.

YOUNG, Judge.

Defendant Eagle Motor Lines, Inc. appeals from a jury verdict in favor of plaintiffs Galloway and Hawkins in a negligence action for personal injuries and property damage.[1] On appeal, Eagle raises three issues [2]:

1) Whether there is sufficient evidence in the record to support the verdict;

2) Whether the trial court erred in refusing to give an instruction tendered by Eagle;

3) Whether the trial court erred in giving plaintiffs' instruction on issues allegedly outside the pre-trial order.

We affirm.

The record indicates that during the early morning hours of January 10, 1977 Galloway and Hawkins were driving two of Galloway's trucks loaded with cattle north on Interstate 65. Because of drifts on the road and blowing snow, the roads were hazardous. Hawkins was driving in front of Galloway and both were traveling in the right hand lane between thirty-five and forty miles per hour. About five miles south of Seymour, Indiana, a truck moving about sixty miles per hour passed Galloway. Although his vision was obscured after it passed, he saw the name "Eagle Motor Lines" on the truck. A second truck, containing the same identifying marks as the first truck, also passed him after he had travelled another quarter of a mile. Galloway talked on his "C.B." radio to the driver of the first passing truck and then told Hawkins that he would lose visibility when the trucks passed. The voice on the "C.B." radio said "I'm getting ready to pass you now too". Hawkins responded "I see what you mean". As the first truck passed, Hawkins recognized the name "Eagle Motor Lines" and an eagle insignia on the truck's door. When the second truck passed, he could only see the letter "E" on the door. He then felt a bump and his truck went off the road. As a result, Hawkins suffered personal injuries and Galloway incurred property damage to his truck and the load of cattle it was carrying.

Eagle argues that there was insufficient evidence and that the trial court erred in not granting a judgment on the evidence at the close of all the evidence because there was no evidence establishing the driver of the truck as an agent (employee) of Eagle acting within the scope of his employment. Eagle contends that the only evidence of agency was their name on the side of the truck which is insufficient to support an inference that the driver was an agent or employee of Eagle acting within the scope of his employment.

Absent any other evidence tending to establish an agency relationship, Eagle would have been entitled to a judgment on the evidence. *State v. Halladay*, (1978) Ind. App., 374 N.E.2d 51; *Pace v. Couture*, (1971) 150 Ind.App. 220, 276 N.E.2d 213. See also *Indianapolis Railways, Inc. v. Horwitz*, (1937) 103 Ind.App. 478, 8 N.E.2d 1015. However, this case is distinguishable from *Halladay, supra* and *Horwitz, supra* because Galloway and Hawkins offered more evidence than the mere existence of the company name on the truck to establish a master-servant relationship. In *Pace, supra* the

---

1. Plaintiffs' complaint also included United States Pipe & Foundry Co. and Occidental Fire and Casualty Co. of North Carolina as defendants. A summary judgment was entered in favor of United States Pipe and a default judgment was entered against Occidental. These defendants raise no issues on this appeal.

2. For purposes of clarity we reword the stated issues.

evidence, unlike the present case, indicated the driver was on his way home without a trailer. In view of these differences; we must review the present evidence to consider the propriety of the trial court's denial of Eagle's motion for judgment on the evidence.

■■ A motion for judgment on the evidence may properly be granted only if there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof. Indiana Rules of Procedure, T.R. 50; *Ortho Pharmaceutical Corp. v. Chapman*, (1979) Ind.App., 388 N.E.2d 541. When considering a motion for judgment on the evidence, the trial court must consider only the evidence and reasonable inferences favorable to the non-moving party. *Huff v. Travelers Indem. Co.*, (1977) 266 Ind. 414, 363 N.E.2d 985. The motion must be denied "where there is *any* evidence or legitimate inference therefrom tending to support at least one of the allegations. Where the evidence is such that the minds of reasonable men *might* differ, a directed verdict is improper, and the resolution of conflictive evidence is for the jury." (Original emphasis). *Ortho, supra*, 388 N.E.2d at 544 (quoting *Vernon Fire & Casualty Ins. Co. v. Sharp*, (1976) 264 Ind. 599, 349 N.E.2d 173, 179). With this standard in mind, we examine the evidence in support of the agency relationship and scope of the employment.

■■ To establish Eagle's liability under the doctrine of respondeat superior, plaintiffs had to show that the driver of the passing truck was acting within the scope of his employment as an employee for Eagle at the time of the accident. *Pace, su-*

*pra.* As proof of an employee/employer relationship and scope of the employment, plaintiffs offered direct evidence establishing that two identical trucks, bearing Eagle's name and insignia, were traveling together under hazardous road conditions at 2:00 a. m. Both trucks were carrying the product of one of Eagle's largest customers. In addition, Eagle's name and insignia were only allowed on trucks owned or leased by them and only employees were authorized to operate these trucks. Eagle had no knowledge of any unauthorized operation of their trucks for the date in question. The above evidence could support a reasonable inference that the driver was employed by Eagle to deliver U.S. pipe and that he was acting within the scope of this employment at the time of the accident.[3] Therefore, the trial court did not err in denying Eagle's motion for judgment on the evidence.

■■ Eagle also complains that the trial court erred in refusing the following instruction:

"If you find that Eagle Motor Lines, Inc. name was displayed by the truck that passed plaintiffs, that fact alone is wholly insufficient to support any reasonable inference that the driver, whoever it may have been, was an agent or employee of Eagle Motor Lines, Inc. or that the driver was acting in the scope of his employment."

It is reversible error when the trial court refuses to give a tendered instruction that is a correct statement of the law, is applicable to the facts of the case, and is not adequately covered by the other instructions given. *Southern Indiana Gas & Elec. Co. v. Steinmetz*, (1977) Ind.App., 377 N.E.2d 1381. If the substance of the ten-

---

**3.** Eagle argues somewhat parenthetically that even if the drivers were employed by Eagle, they were acting outside the scope of their employment because the company had a rule which did not permit driving in such hazardous weather and that the drivers must keep logs of their routes. Because no log indicated any drivers carrying U.S. pipe on this route and because the rule prohibited driving under these conditions, the drivers were not acting within the scope of the employment. It is well established that where a servant is engaged in ac-

complishing an end which is within the scope of his employment, and while so engaged adopts reasonable means intended and directed to the end which result in injury to another, the master is answerable for the consequences, regardless of the motives which induced the adoption of the means even though the means employed were outside of his authority and against express orders of the master. *Pittsburgh, C. & St. L. R. Co. v. Kirk*, (1885) 102 Ind. 399, 1 N.E. 849; *Mock v. Polley*, (1946) 116 Ind.App. 580, 66 N.E.2d 78.

dered instruction is covered by other instructions, it is not error to refuse it. *Dahlberg v. Ogle*, (1978) 268 Ind. 30, 373 N.E.2d 159. Eagle contends that no other instruction covered the subject matter of the instruction and that it was a correct statement of the law because the language is taken from *Halladay, supra.* We disagree. The court gave a preliminary instruction requiring the plaintiffs to bear the burden of proving the material allegations of the complaint. Final instructions stated the preponderance of evidence standard, the fact that not all the law was set out in one instruction, and that the jury was to consider all the instructions as a whole. The second and final instruction stated:

> "A corporation can act only through its officers, employees or agents. Any act or ommission (sic.) of an officer, an employee or an agent acting within the scope of his authority is the act or omission of the corporation.
>
> If you find that an agent was not acting within the scope of his authority or as an agent for the corporation at the time of the occurrence, then the principal is not liable."

Eagle's instruction referring to Hawkins' employment and contributory negligence set out the meaning of scope of employment. Considering these instructions together, the subject of plaintiffs' burden of proof on the elements of agency and scope of employment was covered.

Moreover, the fact that the language for this tendered instruction was taken from an appellate decision, does not necessarily make such language appropriate for a jury instruction. *Mansfield v. Shippers Dispatch, Inc.*, (1980) Ind.App., 399 N.E.2d 423. The language in the tendered instruction was taken from *Halladay, supra* and used in affirming the trial court's grant of the defendant's motion for judgment on the evidence when there was no other evidence tending to establish agency. However, in the present case there is more evidence of agency. The language is defective as a jury instruction because it is misleading.

Eagle's final contention is that the trial court erred in giving plaintiffs' instruction number five, over objection, because it exceeds the issues presented in the pre-trial order. The relevant part of the instruction states:

> "The plaintiffs have the burden of proving all of the following propositions:
>
> First: That the defendant was negligent in one or more of the following particulars:
>
> (a) The unidentified driver of the truck bearing the insiginia (sic) of Eagle Motor Lines, Inc. operated the truck at an unreasonable speed under the circumstances.
>
> (b) The unidentified driver of the truck bearing the insignia of Eagle Motor Lines, Inc. failed to keep a proper lookout for other vehicles using the highway.
>
> (c) The unidentified driver of the truck bearing the insignia of Eagle Motor Lines, Inc. moved from the left-hand land [sic] to the right-hand lane before he was completely past the truck operated by Ronald G. Hawkins and thereby sideswiped the truck operated by Ronald G. Hawkins.
>
> (d) The unidentified driver of the truck bearing the insifnia [sic] of Eagle Motor Lines, Inc. attempted to pass the truck operated by Ronald G. Hawkins when road conditions were too hazardous to permit safe passing and thereby obscured the vision of Ronald G. Hawkins."

The pre-trial order included the following: "As Eagle Motor Lines, Inc.'s employee passed Nelson R. Galloway, Nelson R. Galloway notified him by CB radio that the snow thrown up by his truck completely obscured the vision of the drivers of trucks that he was passing. With the knowledge that he would cause the vision of Ronald G. Hawkins to be obscured, the employee of Eagle Motor Lines, Inc. attempted to pass the truck operated by Ronald G. Hawkins with wanton disregard of the consequences for the personal safety of Ronald G. Hawkins and to the safety of the truck owned by Nelson R.

Galloway. While attempting to pass the truck operated by Ronald G. Hawkins, the employee of Eagle Motor Lines, Inc. negligently:

(1) Drove at a speed greater than was reasonable under the hazardous conditions that existed;

(2) Failed to pass at a safe distance; and

(3) Sideswiped the truck operated by Ronald G. Hawkins by returning to the right side of the highway before safely clear of the truck."

Eagle argues that the allegations of failure to keep a proper lookout and attempting to pass when road conditions were too hazardous were not set out in the pre-trial order. Because of this failure to specify, Eagle argues that it was not given the opportunity to conduct the trial with these theories in mind.

▮ We recognize that when a pre-trial order specifies the issues in the case, the parties are not permitted to go into other issues unless the pre-trial order is amended. T.R. 16(J); *North Miami Consolidated School Dist. v. State*, (1973) 261 Ind. 17, 300 N.E.2d 59. In this respect, it is analogous to Rule 16 of the Federal Rules of Civil Procedure, on which it is based. *Hundt v. LaCrosse Grain Co., Inc.*, Ind.App., 425 N.E.2d 687 (1981). However, the machinery of pre-trial procedure has not been intended to revive the outmoded institution of "code pleading." *Id.* Rather, a pre-trial order should be liberally construed to embrace all the legal and factual theories inherent in the issues defined therein. *Hundt, supra* (quoting 62 Am.Jur.2d *Pretrial Conference* § 29 at 661 (1972)). Moreover, the trial court is given broad discretion in interpret-

ing the pre-trial order. See, *e. g. Hodges v. United States*, (5th Cir. 1979) 597 F.2d 1014 (where the court's interpretation that it did not include a defense was affirmed under F.R.C.P. 16(J) because there was no showing of abuse of discretion). We find nothing to indicate that the trial court permitted unspecified issues to be tried.

Unlike the cases relied on by Eagle[4], the present case does not present a situation where plaintiffs have changed theories and tried the new theory by implication under T.R. 15(B). Rather, it is a case where the factual issues are inherent in the issues defined in the pre-trial order. The plaintiffs proceeded to trial on theories of negligence and wanton misconduct with various contentions. The allegations in the instruction were implicitly, if not expressly, within the specified contentions of the order. The fact that the court denied the T.R. 15(B) motion to amend and still gave the instruction suggests that the court interpreted the pre-trial contentions to include the questioned allegations. Eagle's notice of the issues to be tried was not defective. Therefore, the trial court did not err in giving the complained of instruction.

Affirmed.

MILLER and GARRARD (sitting by designation), JJ., concur.

4. Eagle relies on *Bahre v. Metropolitan School Dist.*, (1980) Ind.App., 400 N.E.2d 197. In that case, the plaintiff proceeded to trial on a contract theory and then argued on appeal that the recovery should be affirmed because it was sustainable on the basis of a tort theory under a T.R. 15(B) amendment to conform to the evidence. This contention was rejected because the defendant had no notice of the change of theory since the same evidence was relevant to both theories. Nor does *State v. Brown*, (1981) Ind.App., 422 N.E.2d 1254 support this argument. In *Brown*, the State had

conceded at trial that Count I had been dismissed and that they were proceeding on their other two counts. The State contended on appeal that count one was tried by implication. This intention was rejected because of lack of notice and the State's admission to the contrary. Both of these cases involve T.R. 15(B) attempts to try a case by implication when the evidence would support two theories, one of which had not been specified as an issue to be tried. This situation is not present in this case now on appeal.